**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Nina Y. Wang**

Civil Action No. 24-cv-00935-NYW-STV

BOARD OF TRUSTEES, SHEET METAL WORKERS' LOCAL 9 PENSION TRUST,
BOARD OF TRUSTEES, COLORADO SHEET METAL WORKERS' LOCAL 9 HEALTH FUND,
JOINT APPRENTICESHIP AND TRAINING COMMITTEE, COLORADO SHEET METAL WORKERS TRAINING FUND,
SHEET METAL WORKERS' LOCAL 9 VACATION FUND,
COLORADO SHEET METAL INDUSTRY FUND, and
SMACNA COLORADO DRUG TESTING FUND,

Plaintiffs,

v.

UNITED TEST AND BALANCE,

Defendant.

---

**MEMORANDUM OPINION AND ORDER**

---

This matter comes before the Court on Plaintiffs' Renewed Motion for Default Judgment (or "Motion"). [Doc. 23; Doc. 23-1]. The Motion was filed on October 13, 2025 by Plaintiffs Board of Trustees, Sheet Metal Workers' Local 9 Pension Trust ("Pension Fund"); Board of Trustees, Colorado Sheet Metal Workers' Local 9 Health Fund ("Health Fund"); Joint Apprenticeship and Training Committee, Colorado Sheet Metal Workers Training Fund ("Training Fund"); Sheet Metal Workers' Local 9 Vacation Fund ("Vacation Fund"); Colorado Sheet Metal Industry Fund ("Industry Fund"); and SMACNA Colorado Drug Testing Fund ("Drug Testing Fund" and, collectively, "Plaintiffs"). [Doc. 23 at 1 n.1]. On August 4, 2026, Plaintiffs filed supplemental briefing and evidence in support of their

Motion. *See* [Doc. 26; Doc. 26-1; Doc. 26-2].[1] Upon review of the Motion, Plaintiffs' briefing, and applicable case law, Plaintiffs' Motion for Default Judgment is respectfully **GRANTED in part** and **DENIED in part**.

## BACKGROUND

The Court draws the following facts from Plaintiffs' Complaint, [Doc. 1], their Memorandum in Support of their Motion, [Doc. 23-1], the attached affidavits and exhibits, [Doc. 23-2; Doc. 23-3], and the supplemental briefing and exhibits, [Doc. 26; Doc. 26-1; Doc. 26-2].

### I. The Collective Bargaining Agreement

The Pension Fund, Health Fund, and Training Fund (collectively, "ERISA Funds") are multiemployer, jointly administered labor-management employee benefit plans created and maintained under the Section 302(c)(5) of the Labor Management Relations Act ("LMRA"). [Doc. 1 at ¶ 8; Doc. 23-1 at 4]; 29 U.S.C. § 186. The ERISA Funds are also "multiemployer plans" as defined in Section 3(37) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1002(37), and "employee benefit plans" under Section 3(3) of ERISA, § 1002(3); *see also* §§ 1002(1), (2); [Doc. 1 at ¶ 8; Doc. 23-1 at 4]. Plaintiffs allege that, "[a]t all relevant times, International Association of Sheet Metal, Air, Rail, and Transportation Workers' Local 9 ('Local 9') has been the exclusive collective bargaining agent for a unit of Defendant's sheet metal employees." [Doc. 1 at ¶ 14].

Defendant United Test and Balance ("Defendant" or "United") is a party to a

[1] The supplemental briefing was filed pursuant to this Court's July 21, 2026 Order. *See* [Doc. 25]. The Court appreciates Plaintiffs' time and efforts in providing supplemental briefing to assist the Court in the resolution of the Motion for Default Judgment.

collective bargaining agreement ("CBA") with Local 9 covering Defendant's sheet metal employees. [*Id.* at ¶ 15]. Plaintiffs allege that the CBA "requires that Defendant contribute to the ERISA Funds and Industry Fund monthly at specified rates for each compensable hour for all of its employees covered by the CBA, as well as requiring Defendant to pay contributions to the Vacation Fund and Drug Testing Fund." [*Id.* at ¶ 17].

Under the CBA, for each month in which covered work is performed, Defendant must submit "remittance reports to the Funds containing information on the hours worked by its covered employees necessary for the Funds to calculate and confirm the amount of contributions owed by Defendant" and pay the corresponding contributions owed to the Funds. [*Id.* at ¶ 18]. Plaintiffs allege that they must rely on contributing employers, such as Defendant, to accurately "report[] hours worked and paid[] and . . . properly calculat[e] and report[] the contributions owed on behalf of their covered employees." [*Id.* at ¶ 23]. "Without accurate information, [Plaintiffs] cannot determine the amount of the monthly contributions due to [Plaintiffs] or the [employee] participants' eligibility for benefits." [*Id.* at ¶ 24].

If Defendant becomes delinquent on any obligation to Plaintiffs, the CBA holds Defendant "liable for such penalties and costs as may be provided for by the Trust Agreement(s), resolution(s) and policies of the Board(s) of Trustees of the respective [Plaintiff] fund(s), including, but not limited to, a late payment fee, interest, liquidated damages, and all costs of collection including reasonable attorney's and accounting fees." [Doc. 23-2 at 46 § 8-24(h); Doc. 23-1 at 5]. The ERISA Funds' Collection Policy—incorporated into the Trust Agreements and, by extension, the CBA—states that an employer's monthly contribution and supporting remittance report become delinquent if

not received by the fifth day of the month following the CBA's due date. [Doc. 1 at ¶¶ 19, 21; Doc. 23-1 at 6; Doc. 23-3 at 79 § 2.1]; *see also* [Doc. 23-3 at 45 § 8-24(c) (setting CBA "Due Date" as the "twentieth (20th) day of the month immediately following the month in which the hours were worked")]. If an employer becomes delinquent on its contributions and does not submit payment by the fifteenth day of the month in which it receives a notice of delinquency, the Collection Policy provides that "interest shall accrue on the delinquent [c]ontributions from the Due Date at the rate of 10% per annum." [Doc. 23-3 at 79 § 2.4]. If an ERISA Fund sues to recover delinquent contributions, "[l]iquidated damages shall be calculated from the Due Date." [*Id.* at 85–86 § 6.1]. The Collection Policy allows for liquid damages equal to the "greater of": (1) the amount of interest on the delinquent contributions, calculated at the rate of ten percent per annum; or (2) "20% of the delinquent [c]ontributions." [*Id.*]; *see also* [*id.* at 79–80 § 2.4 (describing calculation of interest)]. Additionally, Plaintiffs may recover attorney's fees and costs. [*Id.* at 86 §§ 6.2, 6.3]. The CBA incorporates the ERISA Funds' Collection Policy—including the interest accrual and liquidated damages provisions—with respect to delinquencies on an employer's contributions to the Vacation Plan, but not the Industry Fund or Drug Training Fund. *See* [*id.* at 38 § 8-12(B); *id.* at 4 ¶ 10].

**II. Procedural Background**

Plaintiffs initiated this action on April 8, 2024. [Doc. 1]. In their Complaint, Plaintiffs bring two claims under ERISA for delinquent contributions, a claim under the LMRA for breach of labor contract, and a Colorado common law breach of contract claim. *See* [*id.* at ¶¶ 36–62].

At the beginning of this case, counsel entered an appearance on Defendant's

behalf, [Doc. 5], but later moved to withdraw, [Doc. 13]. Judge Varholak granted the motion to withdraw and advised a representative of Defendant, Jeremy Merrill, that Defendant could not proceed in this case as an unrepresented entity and that if Defendant failed to obtain an attorney, a default judgment could be entered against it. [Doc. 15]. Defendant never retained counsel, and in September 2024, Plaintiffs moved for default judgment. *See* [Doc. 17 at 1; Doc. 17-1 at 1]. On September 22, 2025, this Court denied that motion without prejudice, finding that because default judgment would act as a sanction for failure to comply with a Court order,[2] the traditional Rule 55 analysis does not apply in this case. [Doc. 22 at 2–3]. Accordingly, the Court permitted Plaintiffs to file a renewed motion addressing whether default judgment was an appropriate sanction under *Ehrenhaus v. Reynolds*, 965 F.2d 916, 921 (10th Cir. 1992). [Doc. 22 at 2–3]. The Court warned Defendant that "if it fails to obtain counsel by the Court's deadline, and if Plaintiffs thereafter file a motion for default judgment that demonstrates to the Court that default judgment is an appropriate sanction, the Court may enter default judgment against Defendant without any further warning." [*Id.* at 3 (emphasis omitted)]. Plaintiffs filed their renewed Motion for Default Judgment on October 13, 2025, [Doc. 23], and filed supplemental briefing on August 4, 2026, [Doc. 26].

## LEGAL STANDARD

Rule 16 of the Federal Rules of Civil Procedure states that "[o]n motion or on its own, the court may issue any just orders, including those authorized by Rule

[2] In its September 22 Minute Order, the Court observed that "[a]lthough Judge Varholak repeatedly advised Defendant's representative that Defendant could not proceed pro se, he did not expressly order Defendant to obtain counsel in this case." [Doc. 22 at 2]. Accordingly, this Court ordered Defendant to obtain counsel no later than October 13, 2025. [*Id.* at 3]. Defendant did not comply with this directive.

37(b)(2)(A)(ii)–(vii), if a party or its attorney . . . fails to obey a scheduling or other pretrial order." Fed. R. Civ. P. 16(f)(1)(C). Available sanctions include "rendering a default judgment against the disobedient party." Fed. R. Civ. P. 37(b)(2)(A)(vi). In addition, federal district courts "have broad inherent power to sanction misconduct and abuse of the judicial process," including the power to enter default judgment. *Klein v. Harper*, 777 F.3d 1144, 1147 (10th Cir. 2015); *see also LaFleur v. Teen Help*, 342 F.3d 1145, 1149 (10th Cir. 2003) ("[F]ederal district courts have the inherent power to manage their business 'so as to achieve the orderly and expeditious disposition of cases.'" (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991))).

"Default judgment is 'a harsh sanction that should be used only' if the failure to comply with court orders is the result of 'willfulness, bad faith, or any fault of the disobedient party' rather than inability to comply." *Klein*, 777 F.3d at 1147–48 (quoting *Klein-Becker USA, LLC v. Englert*, 711 F.3d 1153, 1159 (10th Cir. 2013)). Before entering default judgment as a sanction, the Court must consider (1) "the degree of actual prejudice to the [opposing party]," (2) "the amount of interference with the judicial process," (3) "the culpability of the litigant," (4) "whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance," and (5) "the efficacy of lesser sanctions." *Ehrenhaus*, 965 F.2d at 921 (considering these factors before entering dismissal as a sanction); *see also Cline v. Parker Indus., Inc.*, No. 2:21-cv-00635, 2023 WL 2574138, at *2 (D. Utah Mar. 20, 2023) (considering these factors before entering default judgment as a sanction).

## ANALYSIS

### I. Default Judgment as a Sanction

"[A] workable system of justice requires that litigants not be free to appear at their pleasure," *Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc.*, 715 F.2d 1442, 1444 (10th Cir. 1983), and "defendants cannot escape liability merely by refusing to participate" in a case, *Pleitez v. Carney*, 594 F. Supp. 2d 47, 48–49 (D.D.C. 2009). Accordingly, the Court must determine whether the *Ehrenhaus* factors weigh in favor of granting default judgment in this case.

***Prejudice to Plaintiffs.*** Plaintiffs argue that they have "been prejudiced as [they have] not been able to proceed on [their] case since Defendant filed its Answer . . . in May 2024." [Doc. 23-1 at 14]. After defense counsel's withdrawal, Plaintiffs could not take discovery or obtain a default judgment under Rule 55, which precluded this case's progression. [*Id.*].

The Court agrees with Plaintiffs that they have been prejudiced by Defendant's failure to comply with a Court order. All plaintiffs have an interest in proceeding with their claims expeditiously, *see Duca v. Falcon Sch. Dist. 49*, No. 22-cv-00880-CMA-MDB, 2022 WL 4131435, at *2 (D. Colo. Sept. 12, 2022) (recognizing that "there is no question" that plaintiffs have an interest in proceeding expeditiously in their cases), and Defendant's failure to obtain counsel has stalled the progression of this case and has prejudiced Plaintiffs. This weighs in favor of sanctions. *See MacAlmon Music, LLC v. Maurice Sklar Ministries, Inc.*, No. 13-cv-02471-PAB-CBS, 2015 WL 794328, at *11 (D. Colo. Feb. 4, 2015) ("Default judgment is an appropriate method for resolving litigation and protecting a diligent plaintiff 'when the adversary process has been halted because

of an essentially unresponsive party.'" (quoting *Teamsters Local 639–Emps. Health Trust v. Boiler and Furnace Cleaners, Inc.*, 571 F. Supp. 2d 101, 106 (D.D.C. 2008))), *recommendation adopted*, 2015 WL 782722 (D. Colo. Feb. 24, 2015).

***Interference With the Judicial Process.*** Defendant's failure to comply with a Court order and obtain counsel has interfered with the judicial process because it has required this Court and Judge Varholak to spend time advising and reminding Defendant of its obligations in federal court. *See* [Doc. 15; Doc. 16; Doc. 22]; *see also Hall v. Wal-Mart*, No. 09-cv-01410-WYD-CBS, 2009 WL 6337957, at *3 (D. Colo. Dec. 18, 2009) (concluding that the plaintiff's "continuing noncompliance with the court's orders . . . increased the workload of the court and interfered with the administration of justice"), *report and recommendation adopted*, 2010 WL 1416785 (D. Colo. Apr. 7, 2010); *MacAlmon Music*, 2015 WL 794328, at *10 (finding that the defendant interfered with the judicial process where the defendant's noncompliance required the court to "spen[d] judicial resources on setting, resetting, and monitoring th[e] civil action, and issuing an Order to Show Cause"). "[I]f a party 'could ignore court orders . . . without suffering the consequences, then the district court cannot administer orderly justice.'" *EBI Sec. Corp., Inc. v. Hamouth*, 219 F.R.D. 642, 648 (D. Colo. 2004) (quoting *Ehrenhaus*, 965 F.2d at 921). This factor weighs in favor of sanctions.

***Culpability of Defendant.*** The Court finds that Defendant is culpable for its conduct in this case. In the Motion to Withdraw, former counsel informed the Court that counsel had advised Defendant that (1) Defendant has the burden of meeting Court deadlines; and (2) if Defendant "fails or refuses to comply with all Court rules and orders, it may suffer possible dismissal, default, or other sanctions." [Doc. 13 at 2]. Judge

Varholak also warned Defendant that it could not proceed in federal court without counsel. [Doc. 15; Doc. 16]. In addition, this Court's September 22, 2025 Minute Order was sent to Defendant's address of record, *see* [Doc. 22 at 4 & n.2], and it was not returned as undeliverable.

Despite this notice, Defendant failed to comply with the Court's order and failed to obtain counsel to represent it in federal court. Defendant's culpability weighs in favor of sanctions. *See MacAlmon Music*, 2015 WL 794328, at *10 (finding defendant culpable where it "disregarded the court's orders, the court's Local Rules, and the Federal Rules" and where the defendant "did not request any extension, demonstrate any need for an extension, or offer any acceptable explanation for its noncompliance" with court orders).

***Whether Defendant Was Warned of the Consequences of its Noncompliance.*** Defendant has been warned on multiple occasions—by its former counsel, by Judge Varholak, and by this Court— that its continued failure to comply with court orders and failure to retain new counsel may result in default judgment as a sanction against it. *See* [Doc. 13; Doc. 15; Doc. 16; Doc. 22]. Despite this repeated warning, Defendant has failed to comply with the Court's order and obtain counsel. This weighs in favor of entering default judgment.

***Efficacy of Lesser Sanctions.*** Finally, the Court must determine whether any lesser sanctions would be an effective sanction for Defendant's conduct. Because Defendant has not obtained counsel or taken any other action in this case, Defendant appears to have completely abandoned its defense against Plaintiffs' claims in this case and there is no indication that Defendant intends to participate in this case going forward. The Court is thus not convinced that any lesser sanction would have any material effect

on Defendant or on this litigation—the imposition of monetary sanctions, for example, would not resolve the issue of Defendant's non-appearance, and this litigation would remain stagnant, with no path forward to resolution. *See Tr. of Colo. Laborers' Health & Welfare Fund v. Adams Excavating, Inc.*, No. 05-cv-01695-MSK-MJW, 2008 WL 659646, at *2 (D. Colo. Mar. 6, 2008) ("Due to the inaction of the Defendant, the case is at a standstill, and no sanction short of a default would have any efficacy."); *Logisys, Inc. v. Williams*, No. 20-cv-00559-EFM, 2023 WL 2450176, at *3 (N.D. Okla. Feb. 16, 2023) ("[T]he basis for sanctions against Defendant is his unresponsiveness, which has effectively 'stayed' the proceedings thus far. Here, sanctions must serve to move this case along, not prolong it further."). Accordingly, the Court does not find that lesser sanctions would be effective in this case.

***Default Judgment is an Appropriate Sanction.*** Weighing all of the *Ehrenhaus* factors, the Court concludes that entering default judgment against Defendant as a sanction for its failure to comply with court orders is justified. Accordingly, the Court **FINDS** that the entry of default judgment against Defendant as a sanction for its failure to comply with the Court's order to obtain counsel.

## II. Appropriate Relief

Before default judgment may be entered, the Court must ascertain the amount of damages incurred. *See Herzfeld v. Parker*, 100 F.R.D. 770, 773 (D. Colo. 1984). "Actual proof must support any default judgment for money damages." *Signature Fin., LLC v. Denver Coach Charters LLC*, No. 21-cv-03098-WJM-SKC, 2023 WL 2479950, at *4 (D. Colo. Mar. 13, 2023) (citing *Klapprott v. United States*, 335 U.S. 601, 611–12 (1949)). In making an independent determination of the amount of damages, "the court may rely on

detailed affidavits or documentary evidence." *CamRanger, LLC v. Belser*, No. 15-cv-00619-PAB-CBS, 2015 WL 7774222, at *1 (D. Colo. Dec. 2, 2015) (quotation omitted); *see also Hermeris, Inc. v. McBrien*, No. 2:10-cv-02483-JAR-GLR, 2012 WL 1091581, at *1 (D. Kan. Mar. 30, 2012) ("Damages may be awarded only if the record adequately reflects the basis for award via a hearing or a demonstration by detailed affidavits establishing the necessary facts." (quotation omitted)).

Plaintiffs seek monetary damages, post-judgment interest, and attorney's fees and costs. [Doc. 23-4 at 1–2]. They also seek injunctive relief. *See* [*id.*].

**A. Monetary Damages**

Plaintiffs seek $111,526.92 in "Settlement Damages" and $8,394.90 in "Delinquency Damages." [Doc. 26 at 2–3].

With respect to Settlement Damages, Plaintiffs have submitted a declaration from Traci Mouritsen ("Ms. Mouritsen"), the claims administration team lead for Rehn & Associates. [Doc. 23-3 at 2 ¶ 1]. Rehn & Associates serves as the third-party administrator for the Pension Fund and the Health Fund and also "provides certain administrative services to the" ERISA Funds, the Vacation Fund, the Industry Fund, and the Drug Testing Fund. [*Id.*]. Rehn & Associates "is responsible for collective and remitting employer contributions to the Funds." [*Id.*].

Ms. Mouritsen's declaration references and attaches a Settlement Agreement entered into between Plaintiffs and Defendant in February 2023. [*Id.* at 7–10 ¶¶ 20–31; *id.* at 101–07]. In the Settlement Agreement, Defendant acknowledged that it "owes a total of $103,044.00 in delinquent contribution to the Funds . . . plus interest and late fees on those delinquent contributions." [*Id.* at 8 ¶ 21; *id.* at 101]. It also acknowledged that it

"owes the Funds interest and late fees in the amount of $14,759.56 for late paid contributions for the period from November 2019 through June 2021." [*Id.* at 8 ¶ 22; *id.* at 101]. Defendant agreed to make monthly payments to satisfy amounts owed to the ERISA Funds and also agreed that, if it failed to make such payments, it would be liable for an additional "20% liquidated damages" calculated from "any delinquent contributions, interest, and late fees[.]" [*Id.* at 8–9 ¶¶ 24, 28; *id.* at 101–02, 104]. Ms. Mouritsen avers that Defendant paid $29,837.35 in monthly settlement payments before it "breached those payment obligations" by ceasing payment, [*id.* at 8, 10 ¶¶ 25, 30], and that Defendant owes $23,560.71 in liquidated damages pursuant to the Settlement Agreement, [*id.* at 10 ¶ 30]. Therefore, Ms. Mouritsen reaches the $111,526.92 in Settlement Damages by adding together the $103,044.00 in delinquent contributions, the $14,759.56 in interest, and the $23,560.71 in liquidated damages, and subtracting from that total the $29,837.35 in monthly settlement payments. [*Id.*].

In support of their request for Delinquency Damages, Plaintiffs have provided a declaration of Bryce Hart ("Mr. Hart"), an administrative assistant at Rehn & Associates. [Doc. 26-1 at ¶ 1]. Plaintiffs have also submitted a spreadsheet that "details the interest and liquidated damages still owed by Defendant as a consequence of its Delinquent Contributions." [*Id.* at ¶ 5]; *see also* [*id.* at 28].

Mr. Hart avers that Defendant owes Plaintiffs $8,394.90 in Delinquency Damages, calculated as follows:

a. $4,733.06 to the Health Fund;

b. $2,391.21 to the Pension Fund;

c. $861.58 to the Training Fund;

d. $384.34 to the Vacation Fund;

e. $23,38 to the Industry Fund; and

f. $1.33 to the Drug Testing Fund.

[*Id.* at ¶ 15]. He also explains how each of these amounts was ascertained. *See* [*id.* at ¶¶ 6–14].

The Court finds that Plaintiffs have adequately demonstrated their entitlement to the above damages and concludes that Plaintiffs are entitled to a default judgment awarding $111,526.92 in Settlement Damages and $8,394.90 in Delinquency Damages for a total of **$119,921.82**.

### B. Post-Judgment Interest

Plaintiffs also request post-judgment interest in accordance with 28 U.S.C. § 1961. [Doc. 23-4 at 2]. Section 1961 states that "interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding . . . the date of the judgment." The applicable interest rate for the week ending September 4, 2026, the week before judgment, was 4.15%. *See* FRED Economic Data, https://fred.stlouisfed.org/release/tables?rid=18&eid=290&od= (follow "1-year" hyperlink under "U.S. government securities – Treasury constant maturities – Nominal" subsection). Accordingly, the Court will award post-judgment interest in the amount of 4.15% per annum, calculated based on the damages award of $119,921.82. *See Petrick v. Diaz-Sabas*, No. 16-cv-00182-REB-KLM, 2017 WL 4220406, at *2 (D. Colo. Aug. 2, 2017).

### C. Attorney's Fees

Plaintiffs also seek attorney's fees. [Doc. 23-1 at 12; Doc. 26 at 3]. The CBA and the Parties' Settlement Agreement allows for recovery of attorney's fees. [Doc. 23-3 at 104 § 6; *id.* at 46 § 8-24(h) (permitting "reasonably attorney's . . . fees" in the event of default)]. "When determining what is a reasonable award of attorney fees, the district court must calculate the 'lodestar,' which is the reasonable number of hours spent on the litigation multiplied by a reasonable hourly rate." *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1233 (10th Cir. 2000); *see also Hensley v. Eckerhart*, 461 U.S. 424 (1983).[3] "The party requesting attorney fees bears the burden of proving the amount of hours spent on the case and the appropriate hourly rates." *United Phosphorus*, 205 F.3d at 1233. To demonstrate reasonable hours, the party must submit records identifying each person for whom fees are sought, the amount of hours for which compensation is requested, and the tasks worked on during those hours. *Id.*; *see also* D.C.COLO.LCivR 54.3. A reasonable rate generally depends on "what lawyers of comparable skill and experience practicing in the area [and community] in which the litigation occurs would charge for their time." *Mann v. Reynolds*, 46 F.3d 1055, 1063 (10th Cir. 1995) (quotation omitted).

Plaintiffs seek fees for work performed by Richard S. Siegel, an of-counsel with 18 years of experience ("Mr. Siegel"); Jeffrey S. Swyers, a partner with 30 years of

[3] Plaintiffs argue that the Parties' Settlement Agreement does not contain a "reasonableness" requirement, so Plaintiffs "are contractually entitled to recover all of their fees and costs, which total $19,408.60." [Doc. 23-1 at 18]; *see also* [Doc. 23-3 at 104 § 6]. The Court need not decide whether an award of fees must be reasonable or not because even if there is a reasonableness requirement, the Court concludes that the requested fees are reasonable.

experience ("Mr. Swyers"); Andrew R. Dietrich, a partner with 18 years of experience ("Mr. Dietrich"); Shreya M. Iyer, a former firm paralegal ("Ms. Iyer"); and Nezah N. Khandker, a current paralegal of the firm ("Ms. Khandker"). *See* [Doc. 23-2 at ¶ 6]. They support their fees request with affidavits from Mr. Siegel and records detailing the hours worked on this matter.[4] *See* [*id.* at 7–21; Doc. 26-2]. Upon review of these records, the Court finds that the hours worked by Mr. Siegel, Mr. Swyers, Mr. Dietrich, Ms. Iyer, and Ms. Khandker are reasonable.

The Court also finds that the claimed hourly rates are reasonable. Mr. Siegel avers that Plaintiffs' requested attorney's fees are calculated based on the following hourly rates: $325 for Mr. Siegel, $360 for Mr. Swyers and Mr. Dietrich, and $210 for Ms. Iyer and Ms. Khandker. [Doc. 23-2 at ¶ 7]. This Court has found hourly rates between $300 and $500 to be reasonable for attorneys with comparable experience to Mr. Siegel, Mr. Swyers, and Mr. Dietrich. *See Weidner v. McHale*, No. 23-cv-00339-NYW-SBP, 2024 WL 4786958, at *8–9 (D. Colo. Nov. 14, 2024) (collecting cases and approving hourly rate of $300 for attorney with 11 years of experience and $500 for attorney with 40 years of experience). Other courts in this District have also approved similar rates to those claimed by Plaintiffs. *See, e.g.*, *Velasco v. Jason's Premier Pumping Serv., LLC*, No. 21-cv-01812-CMA-GPG, 2023 WL 1421647, at *4 (D. Colo. Jan. 11, 2023) (approving hourly rate of $350 in employees' rights case), *recommendation adopted*, 2023 WL 1338689 (D. Colo. Jan. 31, 2023); *Vanech v. Acosta*, No. 13-cv-00168-RPM, 2019 WL 3938065, at

[4] Although at first glance, it appears that some of the charges are duplicates, Mr. Siegel explains that "the Firm bills Plaintiffs for fees and costs incurred in this case by dividing those fees and costs between the Colorado Sheet Metal Workers' Local 9 Health Fund . . . and the Sheet Metal Workers' Local 9 Pension Trust," and separately invoicing the two entities. *See* [Doc. 23-2 at ¶ 10].

*5–6 (D. Colo. Apr. 9, 2019) (approving hourly rates of $400–450 for partners, $350 for senior associates, and $120 for paralegals in an employment discrimination case).

Plaintiffs have therefore established reasonable rates and reasonable hours, and the Court finds no reason to depart from the lodestar calculation. The Court awards attorney's fees as follows: $13,227.50 for Mr. Siegel (40.7 hours x $325); $1,908.00 for Mr. Swyers (5.3 hours x $360); $2,952.00 for Mr. Dietrich (8.2 hours x $360); $336.00 for Ms. Iyer (1.6 hours x $210); and $63.00 for Ms. Khandker (0.3 hours x $210). *See* [Doc. 23-2 at 6, 20]. Accordingly, Plaintiffs' total award for reasonable attorney's fees is $18,486.50.[5]

**D. Costs**

Next, Plaintiffs seek an award of costs. [Doc. 23-1 at 12]. The CBA entitles Plaintiffs to recover their costs. [Doc. 23-3 at 46 § 8-24(h)]. Plaintiffs are **AWARDED** their costs under Local Rule 54.1. However, in this District, costs are taxed by the Clerk of Court, and Plaintiffs must comply with this District's standard procedures for filing a bill of costs to obtain an award of costs. *See* D.C.COLO.LCivR 54.1.

**E. Injunctive Relief**

Finally, Plaintiffs ask the Court to

> enjoin the Defendant, its officers, agents, servants, attorneys, successors, assigns and all persons acting on its behalf or in conjunction with it from: (a) refusing to timely file remittance reports due Plaintiffs for all periods for which the Defendant is obligated to file such reports under the terms of the CBA and successor agreements and the Trust Agreements; and (b) failing or refusing to pay to the Plaintiffs all amounts, including contributions, interest, liquidated damages, late fees, for which Defendant is obligated to make payments under the terms of the CBA and successor agreements,

[5] Plaintiffs seek a total amount of $19,408.60 in both attorney's fees and costs. [Doc. 26 at 3]. Costs are discussed in Section II.D and are not included in the Court's calculation of attorney's fees.

the Trust Agreements, and the Settlement Agreement.

[Doc. 23-1 at 20]. However, Plaintiffs do not address the factors necessary for the Court to enter injunctive relief. *See* [*id.*]; *see also Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 822 (10th Cir. 2007) ("For a party to obtain a permanent injunction, it must prove: (1) actual success on the merits; (2) irreparable harm unless the injunction is issued; (3) the threatened injury outweighs the harm that the injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest." (quotation omitted)). Accordingly, the Court respectfully declines to enter the requested injunctive relief.

For the reasons set forth in this Order, the Motion for Default Judgment is **GRANTED in part** and **DENIED in part**.

**CONCLUSION**

For the reasons stated herein, **IT IS ORDERED** that:

(1) Plaintiffs' Renewed Motion for Default Judgment [Doc. 23] is **GRANTED in part** and **DENIED in part**;

(2) Default judgment **SHALL ENTER** against Defendant in the amount of **$119,921.82**, including $111,526.92 in Settlement Damages and $8,394.90 in Delinquency Damages;

(3) The Delinquency Damages shall be distributed among Plaintiffs as set forth above;

(4) Post-judgment interest shall accrue on the award of **$119,921.82** at a rate of 4.15%, as calculated pursuant to 28 U.S.C. § 1961, from the date of entry of final judgment;

(5) Plaintiffs are **AWARDED** $18,486.50 in attorney's fees;

(6) Plaintiffs are **AWARDED** their costs pursuant to Federal Rule 54(d) and Local Rule 54.1; and

(7) The Clerk of Court is directed to close this case.

DATED: September 10, 2026

BY THE COURT:

Nina Y. Wang
United States District Judge